Margaret LYLES, Appellant,

v.

UNITED STATES of America, et al.

No. 84–5274.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1985.

Decided April 19, 1985.

942

Kenneth Shepherd, Washington, D.C., of the Bar of the District of Columbia Court of Appeals, pro hac vice by special leave of the Court, with whom Joseph H. Green, Jr., Washington, D.C., was on the brief, for appellant.

Edwin W. Tyler, Sp. Asst. U.S. Atty., Washington, D.C., of the Bar of the Commonwealth of Puerto Rico, pro hac vice by special leave of the Court, with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, John W. Polk and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before MIKVA, EDWARDS and GINSBURG, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellant Margaret Lyles brought suit against the United States Government under the Federal Torts Claims Act, 28 U.S.C. § 1346(b) (1982), seeking damages for injuries she allegedly sustained while working in the South Building of the United States Department of Agriculture ("USDA") in Washington, D.C. Following presentation of her evidence at a bench trial on the issue of negligence, the District Court concluded that appellant had not sustained her burden of proving that the government had breached any duty it owed her, and therefore granted the government's motion to dismiss. Invoking Rules 41(b) and 52(a) of the Federal Rules of Civil Procedure, FED. R.CIV.P. 41(b), 52(a), the District Court entered the findings of facts and conclusions of law upon which it based the dismissal. Because these findings lack coherence and are too conclusory to allow for any meaningful appellate review, we remand for further proceedings.

## I. BACKGROUND

Appellant was employed by a private contractor and was responsible for cleaning offices in the basement of the USDA's South Building. In her complaint and at trial, she claimed that, on November 24, 1981, she was struck in the shoulder by two metal poles that had been leaning against a wall in the basement of the South Building. The government did not deny that a pair of metal poles, approximately eight to ten feet long, had been leaning against the wall; that the poles were of a type used within the offices of the government agencies housed in the South Building; or that the hallway in which Lyles was injured was under the control of the government and its employees. Plaintiff's Findings of Fact and Conclusions of Law; reprinted in Appendix.[1] The government

1. The parties did not file stipulations in this case. Instead, the government indicated its ac-

quiescence in plaintiff-appellant's proposed findings of fact by bracketing those statements

also conceded that, under controlling District of Columbia law, appellant was an invitee on the premises at the time of her injury, and that the government was under a duty to exercise reasonable care to keep the hallways reasonably safe for such persons. *Id.* The government denied that its employees had placed the poles in the hallway; that it had exclusive control of the hallway; or that it had actual or constructive notice that the poles had been placed there. *Id.*

At trial, Lyles testified that, before the accident, furniture and a variety of other items and debris had been stored in the lobby where she was injured. Trial Tr. 34–36. She was unable to recall whether she had seen the poles the day before the accident. *Id.* However, Ms. Theresa Morgan, another cleaning person employed in the South Building, testified that she had seen poles similar to those that struck appellant at least five or six weeks prior to the accident. *Id.* at 98. Finally, Lyles introduced into evidence a series of memoranda discussing housekeeping matters within the South Building, specifically the government's practice of storing trash in the hallways.

At the close of Lyles' case, the government moved to dismiss pursuant to Rule 41(b), arguing that Lyles had not established negligence by a preponderance of the evidence. The District Court granted the motion. The trial judge found that the testimony of Lyles and her witness was contradictory and entitled to little or no weight. *Id.* at 148–49, 151. He further stated:

> [I]t appears that the existence of the poles and other items in the hallway—and here we're basically concerned with the poles ... *were there before the incident and actually fell upon the plaintiff's back.*
>
> The court cannot say by a preponderance of the evidence that on this issue

in plaintiff's "Findings" with which it did not

the plaintiff has sustained her burden of proof.

> . . . .
>
> [W]eighing all of the evidence that is before the court, and resolving or attempting to resolve the conflicts within the plaintiff's evidence, the court is obliged, with some reluctance, to find that it cannot say that the injury occurred as a result of the poles, *if there were any,* being there for a sufficient length of time so that the defendant would have known about it.
>
> It is just in fact based on the evidence of record not clear how long the poles were in the hallway, *if they were there at all,* before the occurrence in question, or that the defendant should have known of their existence before the occurrence in question.
>
> . . . .
>
> Again, in addition, there is no evidence that the poles were even in a hazardous position, let alone, as I said before, as the court said before, that the government should have known that they were in such position.

*Id.* at 149–50 (emphasis supplied). The judge concluded that

> [t]he defendant exercised ordinary care, there's no showing that it failed to do so. There's no showing that the defendant violated any regulations, and really no showing that anybody saw the poles until after the occurrence in question.

*Id.* at 152.

## II. DISCUSSION

■ Rule 52(a) requires trial courts to make findings of fact and conclusions of law in all cases tried without a jury. One of its chief purposes is "to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2571,

disagree, and underlining those findings it chal-

at 679 (1971).[2] Where the trial court provides only conclusory findings, unsupported by subsidiary findings or by an explication of the court's reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those findings are clearly erroneous. *EEOC v. United Virginia Bank/Seaboard National*, 555 F.2d 403, 406 (4th Cir.1977); *see also Curtis v. Commissioner*, 623 F.2d 1047, 1053–54 (5th Cir. 1980).

■ Such a situation is presented by the District Court's disposition of the instant case. At one point in the record, the trial judge apparently finds that the poles in question were in the hallway before the accident and that they fell on Lyles. Trial Tr. 149. At another point, however, he states that Lyles failed to sustain her burden of proof on this issue, *id.*, and then later still, he entertains the possibility that the poles may not have been in the hallway at all. *See id.* at 150. We fail to see how the trial judge could have suggested that the poles might not have been present at all, when he had previously found that they had fallen on Lyles' back, and when the government had conceded that they had been in the hallway at least at the time of the accident. More importantly, we are unable to review the District Court's conclusory findings that the government breached no duty to Lyles and violated no regulations, when the court's findings with respect to the very existence of the poles are confused and contradictory.

In addition, the trial court made no mention of the fact that the poles were of a type used by the government, that at all times the government had control of the hallway, and that for years the government had used the hallway for storage purposes.

Certainly these facts are relevant to determining whether the government created the hazard or had constructive notice of it. Yet the trial judge simply asserted that there was no evidence that the government should have known of the danger posed by the poles, without making any reference in his findings to the government's concessions or Lyles' documentary submissions.

■ We find the insufficiency of the trial judge's factual findings, particularly his failure to address in those findings apparently relevant evidence, all the more disturbing in a case such as this, which comes before us on appeal from a dismissal under Rule 41(b). We recognize that, under the Rule, the trial judge was not required to view the evidence in the light most favorable to the plaintiff, *see* 5 J. Moore, J. Lucas, J. Wicker, MOORE'S FEDERAL PRACTICE ¶ 41.13(4) (2d ed. 1984), and that he had the benefit of judging the credibility of the witnesses first-hand. Nevertheless, the judge's ultimate finding that the government exercised reasonable care cannot stand on his credibility determinations alone. The government admitted that it had control, albeit not exclusive control, over the hallway and that the poles were of a type commonly used in government offices. Additionally, Lyles presented documentary evidence indicating that the agency had a practice of storing debris in the hallway. Such evidence at least permits an inference of negligence on the government's part. While we do not mean to suggest that the trial judge was required to draw such an inference, we think it inappropriate for the court to summarily dismiss the plaintiff's suit without at least explaining in cogent findings why it considered this evidence irrelevant or unpersuasive. In light of the undisputed evi-

lenged.

**2.** *See also Snyder v. United States*, 674 F.2d 1359, 1363 (10th Cir.1982) (findings must be " 'sufficient to indicate the factual basis for the ultimate conclusion' ") (quoting *Kelley v. Everglades Drainage District*, 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943)); *EEOC v. United Virginia Bank/Seaboard National*, 555 F.2d 403, 406 (4th Cir.1977) ("It was to assure

that 'detail and exactness' in the trial court's findings as a predicate for intelligent appellate review that Rule 52(a) was adopted."); *Woods Construction Co. v. Pool Construction Co.*, 314 F.2d 405, 406 (10th Cir.1963) (purpose of rule is "to aid appellate court ... by affording a clear understanding of the basis of the trial court's decision").

dence in the record, the trial court's cursory finding of lack of credibility does not suffice. Certainly it provides this court with an inadequate basis upon which to judge the validity of the trial court's judgment dismissing plaintiff's case.

■ Because we can discern no lawful ground for a dismissal under Rule 41(b), we remand for further proceedings. In taking this action, we in no way mean to discourage legitimate case dispositions pursuant to Rule 41(b). However, this court cannot condone a dismissal when we can glean no basis for it in the findings of the District Court.[3] A plaintiff facing summary dismissal under Rule 41(b) is entitled to a coherent statement of the reasons supporting the trial court's action. And, an appellate court requires some reasonable measure of "detail and exactness" in the trial court's findings as a predicate for intelligent review. *See EEOC v. United Virginia Bank/Seaboard National*, 555 F.2d at 406, *supra* note 2.

Because we can find no basis to uphold the judgment of the District Court, we hereby reverse. The case will be remanded to allow the government to put on its evidence, and to allow for a judgment on appellant's cause of action at the conclusion of a full trial on the merits.

*So Ordered*

---

**3.** *Cf. Mitchell v. Baldrige*, 759 F.2d 80, 83 (D.C.Cir.1985) (Rule 41(b) dismissal of plaintiff's prima facie case of discrimination inappropriate in Title VII action where plaintiff lacked opportunity to rebut dispositive defenses raised for first time during oral argument on Rule 41(b) motion).