UNITED STATES FIDELITY AND
GUARANTEE COMPANY,
Appellant,

v.

Hayk L. KAFTARIAN, M.D., et
al., Appellees.

No. 86–172.

District of Columbia Court of Appeals.

Argued Nov. 3, 1986.

Decided Jan. 22, 1987.

Walter J. Murphy, Jr., with whom Hubert W. Farrell, Wheaton, Md., was on brief, for appellant.

Andrew Vernick, Upper Marlboro, Md., with whom Brian C. Shevlin, Arlington, Va., was on brief, for appellees.

Before NEWMAN and STEADMAN, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This appeal stems from a declaratory judgment action filed in the trial court by appellee, Hayk L. Kaftarian, M.D., against appellee, the Hartford Insurance Group (Hartford) and appellant United States Fidelity and Guarantee Company (USF & G). Dr. Kaftarian had been sued in a medical malpractice action stemming from his care and treatment of Ronald Gleaton following his birth at Providence Hospital. The malpractice case settled before trial and a dispute arose between Hartford and USF & G as to which was responsible for liability insurance protection in connection with the malpractice claim. Dr. Kaftarian then filed a declaratory judgment action against both insurance companies to determine which was liable for payment pursuant to the settlement agreement.[1] After a non-jury trial on December 18, 1985, it was concluded (a) that Dr. Kaftarian was acting within the scope of coverage of both policies, and (b) that the USF & G policy provided primary coverage over the Hartford policy. This appeal followed the December 23, 1985 court order,[2] which adopted the find-

---

1. On appeal Dr. Kaftarian and Hartford join together as appellees.

2. Inexplicably, the record contains two different orders, both signed and dated December 23, 1985, issued by the trial court, as set out below:

ORDER

This matter is before the Court upon plaintiff's motion for declaratory judgment on the issue of which of plaintiff's two insurance companies is responsible for plaintiff's liability, in conjunction with the care of Ronald Gleaton. The Court has considered the entire record as well as evidence and argument presented at a bench trial on December 18, 1985. The Court concludes that Dr. Kaftarian was acting within the scope of both the hospi-

ings of facts and conclusions of law submitted *jointly* by plaintiff Kaftarian and defendant Hartford.[3] Perceiving error in the trial court's failure to provide adequate findings, we reverse and remand for further proceedings.

Appellee Kaftarian was, at all relevant times, the Chief of Pediatrics and Chairman of the Department at Providence Hospital, under contract dated October 23, 1978, which provides in pertinent part:

1. Responsibilities of Chief of Clinical Service, Department of Pediatrics:

   F. He will be responsible for quality care of patients in the Pediatrics Section, including the newborn nurseries. He will perform routine examination of the unattached medical Pediatric patients as well as newborn patients. His involvement with the private patients will be strictly on a private consultation basis.

   G. He will furnish continuous service and coverage to Community (Unattached) everyday for twenty four hours per day, by obtaining licensed physicians to function as house officers under his supervision and direction at all times when he is not personally available....

   \* \* \* \* \* \*

   I. He will be responsible for his professional liability insurance covering consultation and private care in accord-

ance with the rules of the hospital and the medical staff.

2. Responsibilities of the Hospital:

   D. The Hospital will permit the Chief of Clinical Service to engage in professional consultations on the Hospital premises and retain any income received by him therefrom apart from the above mentioned salary, provided such services do not interfere with his duties to the Hospital and provided that such consultations do not exceed 20% of his work hours. Any services performed for private patients shall be considered a professional consultation.

Dr. Kaftarian was insured by USF & G as an employee of Providence Hospital while acting within the scope of his duties to the hospital. The policy provides in pertinent parts:

Additional Insured Endorsement:

It is agreed that such insurance as is afforded by this policy shall also apply to:

C. All employees of the named insured, including the house staff of residents, fellows, interns, and other salaried physicians, employed registered nurses, physicians when performing services solely for the insured hospital on a volunteer basis but not otherwise and volunteer workers performing services in the insured hospital and elsewhere at the direction of the named

---

tal policy and the private physician policy while rendering care to the infant. Inasmuch as the hospital policy provides for primary coverage for Dr. Kaftarian's acts within the scope of his hospital duties, *the Court adopts the plaintiff's proposed findings of fact and conclusions of law.*

SO ORDERED.

(Emphasis added.)

ORDER

This matter is before the Court upon plaintiff's motion for declaratory judgment on the issue of which of plaintiff's two insurance companies is responsible for plaintiff's liability, in conjunction with the care of Ronald Gleaton. The Court has considered the entire record as well as evidence and argument presented at a bench trial on December 18, 1985.

The Court concludes that Dr. Kaftarian was acting within the scope of both the hospital policy and the private physician policy while rendering care to the infant, and that the hospital provides for primary coverage for Dr. Kaftarian's acts which are within the scope of his hospital duties.

*To the extent not inconsistent with the above, the Court adopts the plaintiff's proposed findings of fact and conclusions of law.*

SO ORDERED, this 23 day of December, 1985.

(Emphasis added).

**3.** Although Dr. Kaftarian and Hartford were aligned in the declaratory judgment action as plaintiff and one of the defendants, they joined together in the proposed findings of fact and conclusions of law submitted to the trial court.

insured; while acting within the scope of their duties as such....

It is further agreed that such insurance as is afforded by this endorsement also applies to interns, employed registered nurses, resident physicians and surgeons, fellows, and employed members of the house staff while administering first aid or emergency treatment to persons not in care or control of the name insured, but excluding private practice of such additional insurance....

All insurance afforded by the endorsement shall be primary insurance over all other valid and collectible insurance....

Dr. Kaftarian also carried on a private pediatric practice in the hospital. Consequently, he had another policy for this purpose. He was insured against medical liability in his *private practice* by a policy issued by a different insurance company, *viz.*, Hartford Insurance Group.

On July 23, 1979, Doris Fuller gave birth to Ronald Gleaton at Providence Hospital. The newborn was admitted to the intensive care nursery and within the first twenty-one hours of life was attended by physicians who staffed the nursery, as well as the nursing staff. On July 24, 1979, Dr. Kaftarian first examined the Gleaton baby during his daily rounds. Dr. Kaftarian next saw the newborn when he was advised, that same day, that the baby was suffering from acute respiratory distress. Dr. Kaftarian determined the infant had bacterial meningitis and should be transferred to Children's Hospital. At 9:10 p.m. on July 24, 1979, the mother gave her consent to the transfer. Dr. Kaftarian then signed an order transferring the newborn to Children's Hospital.

A lawsuit was filed alleging that Dr. Kaftarian's failure to diagnose the infant's disease earlier was medical malpractice. That action resulted in settlement. Subsequently, a dispute arose between Hartford and USF & G as to which was responsible for payment of the settlement. Each insurer pointed to the other as being liable. Dr. Kaftarian sought an action for declaratory judgment to determine which policy provides primary coverage for his liability.

USF & G denied all coverage and asserts Dr. Kaftarian was acting outside the scope of his employment with Providence Hospital when he attended Ronald Gleaton. Hartford maintains that the doctor was, at all times, acting as an employee of Providence Hospital and that their liability, if any, is limited to amounts in excess of the coverage provided by USF & G.

Appellant, USF & G now appeals the trial court's determination in the declaratory judgment action that Dr. Kaftarian was acting within the scope of coverage of *both policies* and that the USF & G policy provided primary coverage. We find error in the trial court's failure to set forth its reasoning accompanied by adequate findings of fact and conclusions of law.

Super.Ct.Civ.R. 52(a)[4] contains a threshold requirement that a trial court in every case tried without a jury state sufficient findings of fact and conclusions of law to permit meaningful appellate review. *Tauber v. District of Columbia*, 511 A.2d 23, 28 (1986). "Where the trial court provides only conclusory findings, unsupported by

4. **Rule 52. Findings by the Court.**

(a) *Effect.* Unless expressly waived by all parties, the Court shall state findings of fact specially and state separately its conclusions of law in every action tried upon the facts without a jury or with an advisory jury and judgment shall be entered pursuant to Rule 58. In granting or refusing interlocutory injunctions the Court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Such findings of fact and conclusions of law may be in writing or may be stated orally in open court if recorded stenographically or by other means approved by the Court and shall be sufficient if they state the controlling factual and legal grounds of decision. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses....

subsidiary findings, or by an explication of the court's reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those findings are clearly erroneous." *Lyles v. United States,* 245 U.S.App.D.C. 215, 218, 759 F.2d 941, 944 (1985) (citations omitted); *see also Thomas v. Thomas,* 477 A.2d 728, 729 (D.C.1984); *Moore v. Moore,* 391 A.2d 762, 770 (D.C.1978).

We do not have findings before us sufficient to allow application of the law to the facts of this case. The trial court simply stated in conclusory fashion that Dr. Kaftarian was acting within the scope of both the hospital policy and the private physician policy while rendering care to the infant. The proposed findings of the doctor and Hartford asserted Dr. Kaftarian was acting solely as an employee of Providence Hospital.

We are unable to provide an intelligent appellate review based on the trial court's conclusory findings. We therefore remand the case to the trial court with instructions to prepare adequate findings of facts and conclusions of law, accompanied by its reasoning, on the responsibility for liability insurance protection in connection with the medical malpractice claim against Dr. Kaftarian.

*Remanded for further proceedings consistent with this opinion.*